983 F.2d 1204
 61 Fair Empl.Prac.Cas. (BNA) 421,
60 Empl. Prac. Dec. P 42,044,
37 Fed. R. Evid. Serv. 1198
Catherine E. MALARKEY, Plaintiff-Appellee-Cross-Appellant,
v.
TEXACO, INC., Defendant-Appellant-Cross-Appellee.
 Nos. 300, 327, Dockets 92-7585, 92-7633.
 United States Court of Appeals,
Second Circuit.
 Argued Aug. 31, 1992.
Decided Jan. 26, 1993.
 
 Paul Brown, New York City (Elizabeth A. Alcorn, Michael G. Steinberg, Whitman & Ransom, of counsel), for defendant-appellant-cross-appellee.
 Hilary Richard, New York City (Eric M. Lieberman, Thomas C. Viles, Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C., of counsel), for plaintiff-appellee-cross-appellant.
 Before FEINBERG, NEWMAN and CARDAMONE, Circuit Judges.
 CARDAMONE, Circuit Judge:
 
 
 1
 This appeal brings before us for the second time a large corporate defendant, employing 1600 people in its Westchester, New York headquarters, and the plaintiff, its 59-year-old secretary, who has been with the company for 29 years. The two parties are locked in the destructive embrace of a bitterly contested employment discrimination case. It is impossible to pinpoint precisely the motivations that have kept this litigation going for over ten years and why this matter, that should long ago have been resolved, continues. Perhaps the employer charged by the secretary with sex and age discrimination felt--to paraphrase "Frankie and Johnny"--that "she was its employee, but she done it wrong." No men were appointed to positions plaintiff pursued, and those women appointed to the secretarial slots plaintiff sought averaged 54 years old. Obviously the employer was not guilty of sex or age discrimination. Whether it was on account of these baseless accusations or not, the defendant thereafter retaliated by denying plaintiff a secretarial promotion to which she rightly was entitled. This act caused her to believe, so the jury was told, that she heard in the workplace, on all sides, the sound of public scorn. While uncertain of why this litigation has persisted for such a long time, we are firm in our belief that it should now come to an end.
 
 
 2
 Defendant Texaco, Inc. appeals and plaintiff Catherine E. Malarkey, its employee, cross-appeals from a judgment of the United States District Court for the Southern District of New York (Mukasey, J.) entered May 19, 1992 following a jury trial on plaintiff's complaint claiming age discrimination under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq. (1988 & Supp. I 1989, Supp. II 1990) (ADEA). Plaintiff had alleged in a 1981 complaint that the company had discriminated against her on account of her age and sex, and caused her emotional distress by denying her promotions.
 
 FACTS
 A. Plaintiff's Employment History
 
 3
 In order to understand this case it is necessary to develop the facts and prior proceedings in some detail. In 1964 Catherine E. Malarkey began working as a secretary for Texaco at position grade 6. She was then 30 years of age and had an impressive background, having served as a secretary to high ranking executives of large corporations. By all accounts she was a commendable employee at Texaco, rose quickly through the secretarial ranks, and attained grade 12 within ten years. Having recently married, she took a six-month unpaid personal leave of absence in May 1974 to attend ailing family and in-laws. At the end of six months she decided not to return to work and asked for an extension of her leave. Despite a company policy not to permit such leaves for longer than six months, Texaco granted her an additional three-month extension.
 
 
 4
 Upon her return to work in February 1975 there were no grade 12 secretarial positions open. Texaco offered and Malarkey accepted an administrative position in the employment office. In January 1976 she drafted a memorandum to her supervisor questioning Texaco's employment practices, alluding to possible sex and age discrimination by her employer. While working in the employment office, Malarkey found that she was having difficulty satisfactorily placing older women; only young, physically attractive women, she averred, were easily placed. Malarkey asserts that after she wrote this memo, Texaco demoted her from grade 12 to grade 11 and forced her out of the employment office. Texaco responds that she had been told upon return that this position was grade level 11 and that her present pay was greater than when she took the nine-months leave of absence.
 
 
 5
 Plaintiff accepted an offer the following year to become secretary at grade 11 to Robert McCay, a Texaco vice-president. Malarkey insists she took this position upon being assured that if McCay was satisfied with her work, he would restore her grade 12 rank within six months. When McCay was promoted in 1980 to senior vice-president, he was entitled to select an executive grade 12 secretary to accompany him to the executive suite. In making his choice, McCay passed over plaintiff and chose another secretary, Agnes Brady, with whom he had previously worked.
 
 
 6
 Shortly after being passed over, Malarkey accepted another grade 11 position as an administrative assistant, asserting she had no alternative, as Texaco advised her there were no other jobs available. Later, in a meeting regarding her career prospects, Carl Davidson, a vice-president with responsibility for filling secretarial positions informed Malarkey she would not be considered for a promotion to executive secretary because of poor performance evaluations from McCay.
 
 
 7
 Malarkey thereupon filed a complaint with the Equal Employment Opportunity Commission (EEOC) in July 1980 alleging she had been the victim of age and sex discrimination from 1976 to 1980, beginning with her demotion from grade 12 to grade 11, and ending when McCay passed her over for the grade 12 executive secretary spot. Malarkey believes that soon after she brought her EEOC complaint, her actions became a matter of open discussion in management circles, and as a result, she became persona non grata within Texaco. She asserts she was passed over for several secretarial openings and was effectively excluded from consideration for those grade 12 slots that did become available. Plaintiff also alleges she was ill-treated by her supervisors, whom she asserts gave her mindless work. Texaco counters that plaintiff was not considered for promotion only because her performance ratings by various supervisors after 1976 never rose above the barely satisfactory level. The company further posits that Malarkey's various problems at work were related to the fact that she was absent from work for 900 days (the worst absenteeism record in the company) in the ten years from 1979 to 1989.
 
 B. Prior Legal Proceedings
 
 8
 A year after plaintiff filed her complaint, the EEOC issued her a "right to sue" notice and dismissed her complaint for lack of probable cause. Malarkey thereupon commenced the present action in district court in August 1981, repeating the substance of the age and sex discrimination claims brought before the EEOC and also alleging a state law tort claim, the intentional infliction of emotional distress. Judge Haight dismissed Malarkey's sex discrimination claims because, as noted, none of the positions she variously sought were given to men and ruled that her age discrimination claims that allegedly arose before 1980 were time-barred under the ADEA. He also declined to exercise pendant jurisdiction over plaintiff's state law tort claims. See Malarkey v. Texaco, Inc., 559 F.Supp. 117 (S.D.N.Y.1982). On appeal, we affirmed. See Malarkey v. Texaco, Inc., 704 F.2d 674 (2d Cir.1983) (per curiam ).
 
 
 9
 Several years later, as her post-1980 age discrimination claim approached trial, plaintiff sought to amend her complaint to include a cause of action for retaliatory discrimination alleged to have occurred as a result of her 1980 EEOC filing of charges. Judge Mukasey, who had taken over the case when Judge Haight recused himself, issued an order on February 19, 1991 limiting Malarkey's retaliation claims to those occasions when she was denied a promotion by supervisors to whom she had referred in her EEOC charges. Non-promotion retaliation--e.g., being assigned mindless work--and promotion retaliation by Texaco supervisors not named in the EEOC complaint were stricken from the complaint.
 
 
 10
 Subsequently, we handed down Owens v. New York City Hous. Auth., 934 F.2d 405 (2d Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 431, 116 L.Ed.2d 451 (1991). As a result of Owens the district court amended its February order and permitted Malarkey to allege and prove retaliatory denials of promotion, irrespective of whether the decisionmakers named in the EEOC charge were involved. The trial court left in place its prohibition on non-promotion retaliation allegations.
 
 
 11
 In another pre-trial decision, Judge Mukasey ordered the exclusion of evidence relating to six pre-1980 Texaco promotion decisions that Judge Haight had previously dismissed as time-barred, though Judge Haight had left open the possibility that evidence relating to the dismissed claims might be admissible at trial. See Malarkey, 559 F.Supp. at 121. As the judge presiding at the trial of this action, Judge Mukasey again declined to receive evidence of the six pre-1980 promotion decisions, though he allowed plaintiff to introduce "background evidence" pertaining to her performance during the time-barred pre-1980 period, and also permitted her to contest--as denials of promotions--jobs that Texaco refused to consider her for that were lower in grade than the grade 11 level position she held.
 
 
 12
 Following an eight-day trial, the jury returned a verdict in December 1991 against Malarkey on all of her age discrimination claims. The jury also determined that Texaco engaged in retaliatory discrimination against plaintiff with respect to two promotion decisions for which it awarded her damages in the sum of $65,000 whichowing to the jury's express finding of Texaco's "willfulness"--the district court doubled to $130,000. The two promotion decisions determined to be retaliatory were both grade 10 secretarial positions.
 
 
 13
 One position was given to Norma Cavanaugh in 1981 after plaintiff filed her EEOC complaint. Cavanaugh, who was the person recommended, had been a "floater"--one not attached to a specific department--and had recently joined Texaco. She had been an executive secretary with another large corporation and joined one of Texaco's vice-presidents. Texaco insists that Cavanaugh was chosen strictly on her merits and, in any event, that plaintiff had not applied for the position.
 
 
 14
 The second slot was filled in 1983 by Eleanor Coronel as secretary to the assistant to the company's chairman. Coronel was younger, had less experience, and a lower grade than Malarkey. Again, Texaco insists that Malarkey did not apply for this position and that the assistant who selected Coronel did not know of Malarkey's lawsuit or EEOC filing when he made his selection.
 
 
 15
 The district court subsequently denied Texaco's motion for judgment notwithstanding the verdict, and granted Malarkey's request for equitable and injunctive relief, ordering Malarkey promoted from grade 11 to grade 14, with a salary of 90 percent of the maximum for that grade, as well as permanently enjoining Texaco from future retaliation against Malarkey. On June 9, 1992 Texaco sought a stay pending appeal of this injunctive relief granted plaintiff. We denied Texaco's application for the stay, expedited this appeal, and ruled that while plaintiff was being paid at grade 14, she would continue to work in her present grade 11 position. We now affirm.
 
 DISCUSSION
 
 16
 The appeal and cross-appeal challenge a number of district court orders made in limine regarding (I) the allowance of plaintiff's retaliatory claims, (II) evidentiary rulings, (III) whether the trial court permitted plaintiff to claim as a denial of promotion Texaco's failure to place her in a lower grade position than the one she occupied, and (IV) equitable relief granted plaintiff in the form of a promotion and salary increase.
 
 I Retaliation Claims
 
 17
 Both parties disagree with the district court's June 1991 order allowing Malarkey to amend her complaint to assert retaliation claims. Texaco asserts that Owens did not compel the district court to withdraw its February order that had restricted Malarkey's retaliation claims to those relating to decisionmakers named in the EEOC charge. See 934 F.2d at 405. Texaco further insists the district court read Owens too broadly or, in the alternative, that it should have distinguished the instant case from Owens because of its procedural posture. Malarkey, on the other hand, contends the district court erred in restricting her retaliation claims to promotion denials and believes it should have included other non-promotion retaliatory conduct. We believe the district court read Owens correctly.
 
 
 18
 Under the ADEA an employee may not bring a discrimination claim in federal court unless she first files the charge with the EEOC. See 29 U.S.C. § 626(d) (1988). A plaintiff may bypass this agency exhaustion requirement, and bring her complaints for the first time in court, only by demonstrating that new discrimination claims are "reasonably related" to charges that were previously filed with the EEOC. See Kirkland v. Buffalo Bd. of Educ., 622 F.2d 1066, 1068 (2d Cir.1980) (per curiam ). This rule avoids unnecessary repeat filings of EEOC complaints when the subsequent claims are sufficiently similar to those set forth in the original complaint. Cf. Snell v. Suffolk County, 782 F.2d 1094, 1100 (2d Cir.1986).
 
 
 19
 We have held repeatedly that a complaint alleging employer retaliation against an employee who has opposed discrimination may be considered "reasonably related" to allegations already raised with the EEOC. See, e.g., Almendral v. New York State Office of Mental Health, 743 F.2d 963, 967 (2d Cir.1984); Goodman v. Heublein, Inc., 645 F.2d 127, 131 (2d Cir.1981). The reasonably related rule has been broadly construed to allow judicial redress for most retaliatory acts arising subsequent to an EEOC filing; at the same time we have cautioned that this standard is not to be read as granting an open season for litigating any sort of discrimination claim against the employer. See Kirkland, 622 F.2d at 1068.
 
 
 20
 Our most recent application of this standard was in Owens, 934 F.2d 405. There plaintiff filed an ADEA charge against the Housing Authority. While the complaint was pending, the Housing Authority brought disciplinary charges against the plaintiff and refused to plea bargain with respect to them because of plaintiff's pending EEOC complaint. Plaintiff filed a retaliation claim in federal district court based on the Housing Authority's conduct. We ruled that the retaliation claim was reasonably related to the original EEOC filing because it stemmed from the earlier charged discriminatory act and was a direct attempt to thwart plaintiff's attempt to exercise her federal rights. See id. at 411.
 
 
 21
 In the case at hand, the district court properly ruled under Owens that Malarkey's retaliatory promotion claims were reasonably related to her EEOC charge and thus admissible at trial. Owens unambiguously states that adverse employment action taken in retaliation ordinarily is deemed reasonably related to the original complaint. The same is true here: Malarkey's claims of Texaco's retaliatory failure to promote her address the employer's same course of conduct as that alleged in her EEOC filing. Notwithstanding Texaco's contentions to the contrary, it had ample notice that this conduct was at issue. The EEOC complaint was based on Texaco's failure to promote Malarkey due to her age and sex; the retaliation claims are based on essentially the same alleged discriminatory actions and resulted directly from Malarkey's attempts to assert her rights.
 
 
 22
 Texaco would have us distinguish the instant case from Owens because of the procedural differences--Malarkey's retaliation claims arose after her EEOC claims were dismissed and not during their pendency as in Owens. We see no reason why a retaliation claim must arise before administrative proceedings terminate in order to be reasonably related. Instead, the rule is that a claim must arise only after the EEOC complaint has been filed. See id. at 410. Under Texaco's proposed scheme, an employee would need to return to the EEOC to complain about each retaliatory act that occurred after her original complaint was dismissed regardless of the relationship between the retaliation and the pending judicial action. Were such a limitation to be imposed, it would create a procedural barrier for plaintiffs contrary to the remedial purposes of the ADEA.
 
 
 23
 Whether Malarkey's non-promotion retaliation claims were properly excluded admittedly presents a closer call. Malarkey asserts that the language of Owens commands the admission of these claims. In effect, she asks us to read Owens as establishing a rule that all retaliation claims are per se reasonably related. We decline that invitation.
 
 
 24
 After a decade of litigation, plaintiff sought to amend her complaint to allege conduct significantly different-in-kind from the continuing failure to promote that had been the basis of her original EEOC complaint. On the very eve of trial, Texaco was faced with the prospect of investigating and preparing to defend new claims arising out of its alleged conduct never called to its attention at any earlier stage of this extraordinarily lengthy legal saga. Permitting plaintiff to assert these claims at this late date would have unfairly prejudiced Texaco.
 
 
 25
 This is not to suggest that in every instance delay will require rejection of a claim alleged to be reasonably related, but here the delay was unexplained. As noted in the trial court's February 1991 order, Malarkey's new allegations had not become apparent to her only at the close of discovery but had been known by her at least three years earlier. She should have asserted them at that time, giving Texaco an opportunity to defend against them. Under these circumstances, there is no basis to disturb the trial court's exclusion of the non-promotional retaliatory claims.
 
 II Evidentiary Rulings
 
 26
 Evidentiary rulings made by the trial judge are ordinarily overturned only when found to be manifestly erroneous. See Salem v. United States Lines Co., 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962); In re Martin-Trigona, 760 F.2d 1334, 1344 (2d Cir.1985). A manifestly erroneous ruling obviously constitutes a clear abuse of a trial court's discretion. Absent an abuse of its discretion, rulings on evidence made by a judge presiding at the trial are left undisturbed. See United States v. Sun Myung Moon, 718 F.2d 1210, 1232 (2d Cir.1983), cert. denied, 466 U.S. 971, 104 S.Ct. 2344, 80 L.Ed.2d 818 (1984). We review the challenges to the trial court's evidentiary rulings in light of these principles.
 
 A. Malarkey's Earlier Career at Texaco
 
 27
 Texaco contests the admission of evidence pertaining to the pre-1980 events in Malarkey's career. Specifically, it questions the admission of Malarkey's 1964-1974 employment history and the events surrounding the 1976 employment office memorandum. It regards this evidence as irrelevant and prejudicial.
 
 
 28
 Malarkey's cause of action was grounded on her allegations of age and retaliatory discrimination at Texaco and, without these illegal practices, she maintains her career would have advanced as it had for the first ten years. We think her pre-1975 employment history is at least arguably relevant. At the early point in her career, when she was considered a valued and highly competent secretary--before she lodged charges of discrimination against her employer--she had moved up the professional ladder very rapidly. A jury should be allowed to decide whether, absent any discrimination, she would have continued on the same upward trajectory. The mere remoteness in time of these events does not make them irrelevant.
 
 
 29
 The 1976 employment office memorandum is also arguably relevant. It is mentioned in the EEOC filing and in Malarkey's federal complaint and was the first evidence of her belief that Texaco was engaging in alleged sex and age discrimination. It is relevant because it suggests a motive for the subsequent adverse employment actions that constituted retaliation by Texaco.
 
 B. Statements Made by Non-Decisionmakers
 
 30
 Texaco next contends the trial court improperly admitted into evidence statements about Malarkey made by various supervisors and managers who were not the decisionmakers on the positions she alleges she was discriminatorily denied. It raises a variety of points against the admission of these statements, none of which have merit. The non-decisionmaker testimony was clearly probative and admissible under Fed.R.Evid. 401, which states evidence is admissible if it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more ... probable than it would be without the evidence." These statements were received because they showed the pervasive corporate hostility towards Malarkey and supported her claim that she did not receive a promotion due to her employer's retaliatory animus.
 
 
 31
 Texaco's contentions to the contrary based on Haskell v. Kaman Corp., 743 F.2d 113 (2d Cir.1984), and Martin v. Citibank, N.A., 762 F.2d 212 (2d Cir.1985), are unpersuasive. In Haskell, we ruled the district court erred in admitting statements--made by the defendant employer over a period of several years--that were totally unrelated to the plaintiff. See Haskell, 743 F.2d at 120. In contrast, the subject statements in the instant matter were about Malarkey and her work performance and were made within the time frame of the alleged discriminatory actions. Cf. O'Donnell v. Georgia Osteopathic Hosp., Inc., 748 F.2d 1543, 1547-48 n. 5 (11th Cir.1984) (distinguishing Haskell on the same grounds). In Martin, we stated that an employee's comments about his own situation, and not that of the plaintiff, had no bearing on the issue of discrimination. See Martin, 762 F.2d at 215-17. This too is unlike the facts here. None of Texaco's remaining contentions regarding the evidentiary rulings of the trial court merit discussion because all of them were well within the court's broad discretion.
 
 
 32
 C. Denial of Promotions Prior to EEOC Filing
 
 
 33
 Plaintiff contests the trial court's decision to exclude the "background" evidence pertaining to Texaco's failure to promote her on six occasions prior to the filing of her 1980 EEOC complaint, saying that Judge Mukasey, who ruled this evidence inadmissible, erred because he misinterpreted Judge Haight's earlier decision on the same issue. See Malarkey v. Texaco, 559 F.Supp. at 121. According to plaintiff, though Judge Haight held the claims themselves time-barred, he said the underlying evidence should be admitted at trial. She insists this ruling was compelled by the Supreme Court's holding in United Air Lines, Inc. v. Evans, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977).
 
 
 34
 We do not think Judge Mukasey abused his discretion in refusing to admit this evidence. In our view, he correctly held that Judge Haight's 1982 discussion of the evidentiary point was a passing comment not intended to bind the judge who would preside at trial. We are unable to accept the proposition that Judge Haight intended to make an evidentiary ruling for a future trial, before the start of discovery, where he did not in the end actually preside at the trial. Instead, we believe, as is customary in pre-trial decisions, Judge Haight left the door open for the trial judge to rule on the use of this background evidence. In any event, Judge Mukasey was free to revisit the issue.
 
 
 35
 Nor does Evans posit a rule of law to the contrary. It merely states that earlier discriminatory acts "may constitute relevant background evidence." Evans, 431 U.S. at 558, 97 S.Ct. at 1889 (emphasis supplied). As such, it obviously does not compel the admission of such evidence, but rather affords the trial court discretion to decide whether such evidence is admissible under the ordinary evidentiary standards of probity and prejudice. See Song v. Ives Labs., Inc., 59 Fair Empl.Prac.Cas. (BNA) 1069, 1071-72, 1990 WL 96768 (S.D.N.Y.1990) (noting that background evidence is admissible at trial under Fed.R.Evid. 403 only if more probative than prejudicial); Ganguly v. New York State Dep't of Mental Hygiene, 511 F.Supp. 420, 427 (S.D.N.Y.1981) (holding background evidence admissible subject to evidentiary rules); see also Wingfield v. United Technologies Corp., 678 F.Supp. 973, 983 (D.Conn.1988) (excluding time-barred evidence because it was prejudicial, confusing, and would delay the trial). Weighing these considerations, as was done here, we see no error in the trial court ruling the background evidence inadmissible.
 
 
 36
 III May Refusal to Place in a Lower Grade Position be Discrimination?
 
 
 37
 Texaco points to two reversible errors it believes were made respecting the Cavanaugh and Coronel secretarial positions, upon which the jury based its retaliation verdict for plaintiff. First, the employer contends that these claims, based on the two grade 10 positions, should not have been cognizable as a matter of law in a case where plaintiff alleges a failure to promote, as the lower grade positions were not promotions but instead were demotions from plaintiff's grade 11 spot. According to Texaco, failure to place Malarkey in the Coronel and Cavanaugh grade 10 positions could only constitute an adverse employment action for ADEA purposes under an anomalous "failure to demote" theory. Second, Texaco asserts that it was entitled to a judgment notwithstanding the verdict because there was no evidence to show that the decisionmakers involved in filling these two positions were aware of Malarkey's EEOC filing, and even if they were aware, that they acted with a retaliatory purpose. We deal with each of these arguments in turn.A. Admission of Grade 10 Proof
 
 
 38
 Posing the question as whether these two positions constituted demotions for plaintiff is a lawyer's red herring. To rule that for an employer to refuse to give its employee a demotion states a viable discriminatory cause of action would stand the ADEA and common sense on their heads. Such is particularly true in this case, where Malarkey contends that upon her return from her personal leave of absence, her employer "tricked [her] into a demotion." So plaintiff, on the one hand, alleges a demotion is discriminatory and, on the other hand, alleges a failure to demote is discriminatory. Were that the law, an employer asked to take a given action with respect to an employee would be condemned if it did and condemned if it did not. Hence, we adopt no such rule.
 
 
 39
 Instead, we think it more constructive to examine all the circumstances of each case, not to focus exclusively on words like "promote" or "demote" without regard to their significance in the context of the case. Here plaintiff had been for ten years a splendid secretary, meriting her raises in pay and grade. Upon expiration of her six-month personal leave of absence--and the over three-month further extension of that leave, which Texaco need not have given her--Malarkey agreed to take an available employment office opening. Malarkey's good secretarial skills, as it turned out, were not transferable into the administrative skills required of her in the employment office. Her ratings went down to the marginal level. The employer-employee relationship deteriorated. She felt her talents were being misused and filed the EEOC charge accusing her employer of sex and age discrimination. Texaco, for its part, plainly was stung by what it strongly believed were baseless accusations from an employee it had gone far to accommodate. Although it is not now possible to sort out who was right and who was wrong in every detail, it is clear that plaintiff wanted to return to the executive secretary track where she had been so successful earlier. That never happened. The jury believed the reason for it was Texaco's retaliation against her. Thus, what constitutes a promotion or a demotion may only be decided by looking at an employee's skills and goals in the context of an employer's needs and openings, all of which is a question properly reserved for the jury, not to be ruled on as a matter of law by the court.
 
 
 40
 The jury was entitled to decide whether taking one of these grade 10 positions would have helped plaintiff's career objectives. Either would have permitted her to return to her secretarial status and given her the type of work she liked and was good at. These spots would also have exposed Malarkey to future high-level executives who, if they had been favorably impressed with her work, might have chosen her to become their executive secretary, much as Malarkey's former boss chose Agnes Brady. The Coronel position, in particular, provided great visibility for those purposes as it was located on the much-coveted executive floor.
 
 
 41
 As an additional reason not to focus exclusively on grade 10 as a demotion, it is not clear from the record whether Malarkey's grade actually would have been lowered had she accepted either post. Some evidence was introduced at trial to show that a position level for a particular job was not fixed, but changed depending upon the grade level of the person who filled it. For example, Malarkey testified that the position offered to Norma Cavanaugh was classified as a grade 10 to reflect Cavanaugh's grade. Earlier, when Malarkey was working for McCay, the same secretarial slot had been classified as a grade 11. Thus, even if we were to accept Texaco's argument that when employees are given lower grades they are demoted, we believe the jury was entitled to decide whether Texaco's refusal to extend the Coronel and Cavanaugh secretarial positions to plaintiff was retaliatory discrimination.
 
 B. Judgment Notwithstanding the Verdict
 
 42
 The district court rejected Texaco's argument that it was entitled to a judgment notwithstanding the verdict. We review this issue de novo, see Proteus Books Ltd. v. Cherry Lane Music Co., 873 F.2d 502, 508 (2d Cir.1989), and examine the proof in a light most favorable to the plaintiff, drawing all reasonable inferences in her favor, and reverse only if we then determine, drawing such inference, that no reasonable fact-finder could have reached a verdict for her. See Martin, 762 F.2d at 217.
 
 
 43
 To prove retaliation, Malarkey needed to demonstrate by a preponderance of the evidence that she was engaged in a protected activity of which her employer was aware, she was denied promotion, and there was a causal connection between the protected activity and the adverse employment decision. See Manoharan v. Columbia Univ. College of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir.1988) (Title VII case). Once plaintiff meets this burden, the employer must produce evidence of a non-retaliatory reason for its employment decision. See Dominic v. Consolidated Edison Co. of N.Y., Inc., 822 F.2d 1249, 1254 (2d Cir.1987).
 
 
 44
 Texaco contends that Malarkey failed to meet her threshold burden. Quite the contrary. Malarkey presented sufficient evidence for the jury rationally to conclude that her failure to secure the secretarial track grade 10 positions was caused by retaliation. The jury heard evidence revealing that when Carl Davidson was consulted about the post Cavanaugh obtained, Davidson knew of Malarkey's claims of discrimination and viewed her negatively because of her disloyalty to Texaco. The jury could easily have reasoned that Davidson expressed these views to the appointing officer. At the time of the Coronel decision, further evidence indicated that warnings pervaded the office to avoid Malarkey because of the legal actions she had instituted. For example, there was testimony that a Texaco supervisor openly questioned Malarkey's reliability due to the pending suit, and that a manager warned a co-worker that he should steer clear of "Malarkey's problems." Several other managers also refused to help Malarkey due to similar concerns. Hence, although the officer who selected Coronel testified that he was ignorant of Ms. Malarkey's situation, the contrary testimony before the jury could have led it to disbelieve him.
 
 
 45
 Based on these facts, the jury readily could have found that absent discriminatory animus, Malarkey would have secured one of these two positions on her merits. Her qualifications were comparable and in some ways exceeded those of the women who were selected. She had 14 years of secretarial experience at Texaco, much of that time spent at grades 11 and 12. Although both positions were filled by college graduates, which Malarkey was not, both of the candidates selected had been with Texaco for a shorter period of time than Malarkey. Both women at the time occupied grades lower than plaintiff.
 
 
 46
 Texaco pursues this argument by noting that Malarkey did not apply for the vacant grade 10 positions. Yet, the rule is that a plaintiff's failure to apply for a position is not a bar to relief when an employer's discriminatory practices deter application or make application a futile endeavor. See International Bhd. of Teamsters v. United States, 431 U.S. 324, 364-67, 97 S.Ct. 1843, 1869-71, 52 L.Ed.2d 396 (1977). That was the situation here. By its own admission, Texaco had no formal job-posting or application system prior to 1988; rather, Carl Davidson played the key role, recommending candidates to managers with openings. Malarkey testified she was told he was the "queen maker." Further testimony revealed that Davidson called Malarkey a problem employee and actively promoted employees like Cavanaugh in Malarkey's stead. The jury could have determined based on this proof that Davidson sealed Malarkey off from consideration for openings, making her virtually an untouchable within the corporation, ensuring that applications by Malarkey for the Cavanaugh or Coronel spots would have been futile.
 
 
 47
 Admittedly, this is a vexing case with a multitude of conflicting factual claims. But our review is limited to legal issues, and in that area it suffices for us to determine that based on this record the jury's findings for Malarkey were not irrational and the district court did not err in denying Texaco's motion for judgment notwithstanding the verdict.
 
 IV Equitable and Injunctive Relief
 
 48
 We turn finally to discuss the district court's award of equitable and injunctive relief, subject to reversal only for an abuse of discretion or for a clear error of law. See Sierra Club v. Hennessy, 695 F.2d 643, 647 (2d Cir.1982).
 
 A. Promotion to Grade 14
 
 49
 The purpose of the ADEA's anti-retaliation provision is to protect persons who initiate a suit to vindicate a right that Congress has recognized as a wrong. See EEOC v. Cosmair, Inc., 821 F.2d 1085, 1088 (5th Cir.1987). The ADEA directs courts to "grant such legal or equitable relief as may be appropriate to effectuate the purposes" of the Act. 29 U.S.C. § 626(b) (1988). This broad grant of authority is to be used by district courts "to fashion remedies designed to ensure the victims of ... discrimination are made whole." Whittlesey v. Union Carbide Corp., 742 F.2d 724, 727-28 (2d Cir.1984) (addressing age discrimination). To make a plaintiff whole a district court may order that an employee be promoted. See, e.g., 29 U.S.C. § 626(b); Blim v. Western Elec. Co., 731 F.2d 1473, 1478 (10th Cir.), cert. denied, 469 U.S. 874, 105 S.Ct. 233, 83 L.Ed.2d 161 (1984).
 
 
 50
 In determining the equitable relief necessary to make Malarkey whole, the district court looked at the damage award. It surmised the jury awarded plaintiff $65,000 by comparing her salary to that of Norma Cavanaugh. It apparently reasoned that to make Malarkey whole required that she be equated with Cavanaugh, whose grade 10 position the jury found she would have acquired in 1981 but for Texaco's retaliatory practices. Thus, the district court ordered plaintiff promoted to the grade to which Cavanaugh rose. This remedy is not an abuse of discretion.
 
 
 51
 Texaco insists that the award of grade 14 and salary, which represent Cavanaugh's current position, went far beyond making Malarkey whole, as mandated by the ADEA. It contends that plaintiff has been placed in a better position than she would have been absent discrimination. Texaco would have Malarkey placed in the grade to which she was entitled ten years ago when this litigation began, that is to say, grade 10. But, by any measure, Texaco's solution falls short of the ADEA command to make a discrimination victim whole. Its proposed remedy would neither adequately reward a plaintiff who persevered through a decade of bitter litigation, nor warn potential defendants that retaliatory conduct will be costly. Malarkey cannot simply be placed today in the grade that she should have occupied in 1981, and any attempt to compensate her adequately must take into account what would likely have happened in the ensuing years. Malarkey's 1964 to 1974 employment record shows that she advanced at a rapid rate, and from this record, it is reasonable to infer that barring discrimination she would not have been frozen in her 1981 position. Given Malarkey's damage award and the express jury findings, this is a logical extension of the jury's determination. The district court has the power to grant equitable relief based on this jury verdict.
 
 
 52
 Texaco protests bitterly the speculative nature of the calculations made by the court. It asks how the court can know that Malarkey's career would have paralleled that of Cavanaugh. It was the jury of course and not the trial court that made this determination. Moreover, Texaco must recognize that there is simply no exacting calculus that can be employed to pinpoint the correct remedy. Rather, this is a process in which uncertainties are endemic. To this end, we quite agree with Judge Mukasey's statement below that "[a]ny uncertainty as to how far the remedy should reach in order to provide relief is the result of Texaco's unlawful retaliation; Texaco should not be the beneficiary of that uncertainty." Accord EEOC v. Kallir, Philips, Ross, Inc., 420 F.Supp. 919, 923 (S.D.N.Y.1976) ("the wrongdoer does not become the beneficiary of his own wrongful conduct"), aff'd without opinion, 559 F.2d 1203 (2d Cir.), cert. denied, 434 U.S. 920, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977).
 
 B. Injunctive Relief
 
 53
 Texaco contends that the jury found retaliation against plaintiff last occurred in 1983 and none subsequently, so it was an abuse of discretion to enjoin Texaco permanently from future retaliatory conduct. Texaco characterizes such relief as "drastic," "superfluous," and an abuse of discretion. It relies on Kirkland v. Buffalo Bd. of Educ., 487 F.Supp. 760, 773 (W.D.N.Y.1979), to support its contention that relief was improper.
 
 
 54
 It hardly seems drastic to require Texaco to obey the law as set forth in the ADEA with respect to Catherine Malarkey. It is difficult to discern what heavy burden the order places on the employer: it covers a single employee in a company employing nearly two thousand in its corporate headquarters alone. The injunction does not require Texaco to change employment practices, reorganize departments, or rewrite official procedures. Moreover, we do not regard it as superfluous to subject an employer found to have discriminated to the district court's contempt powers, were it to repeat its retaliatory conduct.
 
 
 55
 Texaco's reliance on Kirkland is misplaced as well. In Kirkland, the district court determined that the illegal practice at issue was an isolated violation of Title VII. See 487 F.Supp. at 773. As a result, it refused to grant the plaintiff a broad injunction barring discrimination against all black employees of the defendant school board. The court found that such an injunction would go well beyond an act that would in its view not be repeated. See id. We have a markedly different situation. In this case, there was evidence of widespread, continuous antagonism within Texaco towards Malarkey, which the jury determined reached two decisionmakers. In light of these facts, Judge Mukasey determined that a danger of future retaliation exists and issued a narrow injunction protecting just one individual. We refuse to find that this contradicts Kirkland.
 
 
 56
 Nor do we conclude that Judge Mukasey's relief constitutes an abuse of the broad discretion that we have previously held that district court judges possess in fashioning relief under the ADEA. See Whittlesey, 742 F.2d at 727-28. In granting this injunction, Judge Mukasey admitted that if he erred, he preferred to do so on the side of caution. Texaco protests Judge Mukasey's decision before this Court as if it had clean hands; however, it cannot set aside the fact that it has been found guilty of two acts of willful discrimination in violation of the ADEA. We agree that doubts are not to be resolved in the wrongdoer's favor. We affirm the district court's injunctive order.
 
 CONCLUSION
 
 57
 Accordingly, the judgment of the district court is affirmed. Each party to bear its own costs, including attorney's fees. In that connection, we note the district court has already awarded plaintiff attorney's fees in a sum greater than $268,000.