**Susan B. MENDES, Anthony Mendes and Joseph Doran, Plaintiffs,**

v.

**Michael JEDNAK, Saint Joseph College, Saint Joseph College as Plan Administrator for Group Long Term Disability Insurance Plan, Defendants.**

**No. 3:96CV2371 (WWE).**

United States District Court, D. Connecticut.

March 22, 2000.

6. Whether C & E is an agent of D & S is an    issue of fact to be decided by the trier of fact.

Philip L. Steele, Hartford, CT, for plaintiffs.

Lissa J. Paris, Michael C. Harrington, Murtha, Cullina, Richter & Pinney, Hartford, CT, for defendants.

### RULING ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

EGINTON, Senior District Judge.

Plaintiffs Susan B. Mendes, Anthony Mendes and Joseph Doran bring this action against the defendants, Michael Jednak and Saint Joseph College, alleging violations of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), the Employment Retirement Income Securities Act ("ERISA") and a variety of other state law causes of action.

Pursuant to Fed.R.Civ.P. 56, the defendants move for summary judgment on eleven counts of the plaintiffs' eighteen count complaint.[1] For the reasons set forth below, the defendants' Motions for Summary Judgment [Docs.## 152 and 155] will be granted in part and denied in part.

#### Facts

The moving papers and opposition papers set forth the pertinent facts. Defendant Saint Joseph College is a private educational institution located in West

---

1. Defendants Michael Jednak and Saint Joseph College move for summary judgment on Counts One through Nine, Fourteen and Fifteen in document 152. Defendant Saint Joseph College separately moves for summary judgment on Count Sixteen in document 155.

Hartford, Connecticut. Its Physical Plant is responsible for many of the day to day operations of the College. It comprises of four departments: (1) Housekeeping, (2) Grounds (3) Maintenance and (4) Campus safety. Each department has its own supervisor who reports directly to the Director of the Physical Plant.

In 1994, Saint Joseph College was in need of a Director of the Physical Plant. After forming a search committee and conducting interviews, the college hired defendant Michael Jednak on April 25, 1994.

During the times relevant to the complaint, plaintiff Ms. Mendes worked as the College's Executive Housekeeper. She supervised the Housekeeping Department which was composed of twenty-three people, and she reported to Mr. Jednak.

Plaintiff Anthony Mendes is the husband of Plaintiff Susan Mendes. Mr. Mendes alleges in Counts Twelve and Thirteen that the defendants' actions caused Mr. Mendes to sustain substantial expenses for the medical care for Ms. Mendes and to suffer loss of consortium. These counts are not addressed in this ruling.

During the relevant times, plaintiff Doran was the supervisor of the Grounds Department at the College.

*Disagreement on Running the Housekeeping Department*

When Mr. Jednak assumed his role at the College in 1994, he proposed various improvements with respect to the Housekeeping Department. The proposed improvements included: (1) expanding the night shift to clean the Library, the School for Young Children, and the main classroom building to minimize inconvenience to students and faculty; (2) implementing team cleaning to increase efficiency; (3) making Ms. Mendes a working supervisor; and (4) expecting Ms. Mendes to assume more of a financial responsibility for running her department. Ms. Mendes disagreed with these changes and resisted the implementation of any of Mr. Jednak's proposals because she claimed her department did not need them. Although Ms. Mendes assigned people to a night shift,

she never implemented the other three proposals.

*Incident Reports*

On three occasions, Mr. Jednak sent memos to Ms. Mendes's personnel file. The first occurred soon after Mr. Jednak's arrival at the College. Ms. Mendes approached Mr. Jednak to discuss the granting of several leaves of absence for various housekeepers during the summer months. Ms. Mendes claims that in the past, leaves of absence had been granted. Mr. Jednak, however, refused to grant any of the housekeeping staff a leave of absence, and on April 28, 1994, Mr. Jednak placed a memorandum in Ms. Mendes's personnel file concerning the scheduling of leaves of absence and the scheduling of vacations during the summer. The memo stated that the position of anyone who took a leave of absence during the summer months would not be secured for their return because the College was hosting numerous summer camps.

The second incident concerned Ms. Mendes's handling of a situation where biomedical waste was improperly disposed. Under the supervision of Ms. Mendes, the housekeeping staff was responsible to clean the College's health facility. One day, a member of the staff disposed of biomedical waste in the trash along with other waste. Although Ms. Mendes was aware that the disposal of the biomedical waste had been conducted improperly, she was not familiar with the College's written procedures for the disposal of such waste, and she did not try to correct the mistake.

After Mr. Jednak was informed of the problem, he attempted to locate and retrieve the biomedical waste. He called the College's refuse collector, ordered the housekeeping staff to stop the cleaning of the Health Center until they were properly trained, and ordered Ms. Mendes to search the College dumpster for the missing waste. A memo regarding the incident was sent to Ms. Mendes's file.

The third memo, dated July 11, 1994, concerned Ms. Mendes's performance as Executive Housekeeper at the College. After receiving Jednak's July 11, 1994, performance evaluation, Ms. Mendes did not return to work. Her doctor sent a note to the College simply stating that she could not work for two weeks. The note did not contain any information concerning why Ms. Mendes left work or whether she would return. Moreover, Ms. Mendes never notified the College of her intention to leave work and never formally requested a leave of absence.

On July 28, her doctor sent another note explaining that Ms. Mendes would be able to restart work on August 23.

On August 19, 1994, Ms. Mendes's lawyer sent a letter to the College asking the College to accommodate her condition under the ADA by removing Mr. Jednak from his position so that Ms. Mendes could return to her job. Despite the doctor's assurance that Ms. Mendes could return to work, she never did.

After Ms. Mendes was out of work for seventeen weeks, the College sent her a letter stating that her former position was being filled by another individual and that the College could no longer guarantee her position if she decided to return to work.

In the summer of 1996, Ms. Mendes sought to return to her former position, but the College did not rehire her.

*Disability Benefits*

While working at the College, Ms. Mendes claims that she experienced panic attacks. A panic attack is a feeling of faintness and asphyxiation. On two occasions Ms. Mendes had a panic attack near Mr. Jednak, but immediately left the room. Ms. Mendes claims that her panic attacks progressively worsened while working under Mr. Jednak. Among other things, she asserts that her panic attacks were occasionally caused by Mr. Jednak not listening to her. As a result of these panic attacks, Ms. Mendes left the College in July 1994.

During Ms. Mendes's absence from the College(from October, 1994 until June, 1995), she received long-term disability benefits from The Hartford. On June 21, the Hartford discontinued her benefits after an independent medical examination.

*Doran*

On October 10, 1994, the Interim Business Manager of the College, Dr. Robert Caffrey, sent Mr. Jednak a note regarding his dissatisfaction with the grounds of the College. Specifically, Dr. Caffrey complained about the edging, weeds in the flower beds, pruning of bushes, and weeds in the sidewalk. On three occasions, Mr. Jednak sent a memo to Doran enumerating grounds concerns that needed to be addressed.

On October 18, 1994, the College terminated Doran's employment.

## DISCUSSION

Summary judgment pursuant to Fed. R.Civ.P. 56(c) is appropriate if the court finds, after viewing the facts in the light most favorable to the nonmoving party, that there is no genuine issue of material fact pertaining to a given issue and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The burden is on the moving party to show that no material facts are in dispute. *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987). A dispute over a material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991). The court's role in considering summary judgment is not to resolve disputed issues, but only to determine the existence of factual issues to be tried. *Knight v. United States Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986).

In the context of a motion for summary judgment, disputed issues of fact are not material if the moving party would be entitled to judgment as a matter of law, even if the disputed issues were resolved in favor of the nonmoving party. Such factual disputes, however genuine, are not material, and their presence will not preclude summary judgment. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Cartier v. Lussier,* 955 F.2d 841, 845 (2d Cir.1992).

## A. Title VII, ADEA and ADA Retaliation

Defendants assert that: (1) Ms. Mendes's Title VII, ADEA and ADA retaliation claims are time barred because her retaliation charges were not filed with the EEOC within the three hundred day limit; and (2) Mr. Doran's ADEA retaliation claims are time barred because he never filed an administrative charge alleging a violation of the ADEA with the EEOC.

In order for the plaintiffs to bring an action under Title VII, the ADA, or ADEA, they must file an administrative complaint with the Equal Employment Opportunity Commission ("EEOC") within three hundred days after the alleged unlawful employment practice occurred. 42 U.S.C. sec. 2000e–5(e). 42 U.S.C. sec. 12117; 29 U.S.C. sec. 626(d). When the plaintiff fails to file a timely charge, the claim is time barred. *Gomes v. Avco Corp.,* 964 F.2d 1330, 1332–3 (2d Cir.1992). A plaintiff may bypass this requirement by demonstrating that any new discrimination claims are reasonably related to charges that were previously filed with the EEOC. *Malarkey v. Texaco, Inc.,* 983 F.2d 1204, 1208 (2d Cir.1993).

■ A claim of retaliation based on conduct that occurred subsequent to the filing of an administrative charge is "reasonably related" to charges previously filed with the EEOC. *Butts v. City of New York Dept. of Housing,* 990 F.2d 1397, 1401 (2d. Cir.1993). Relation back avoids the necessity for repeated filing of EEOC complaints. *Malarkey,* 983 F.2d at 1208.

*Plaintiff Ms. Mendes (Counts One, Two and Fifteen)*

Ms. Mendes claims four retaliatory acts in her complaint. Three of the retaliatory acts occurred after she filed her complaint with the EEOC alleging violations of Title VII and the ADEA. In 1995, Ms. Mendes filed a complaint with the EEOC alleging violations of ADA and retaliation. The Court finds that Ms. Mendes's claims of retaliation are reasonably related to her allegations in her EEOC complaints. Summary judgment will be denied on Counts One, Two and Fifteen.

*Plaintiff Doran (Counts Three and Four)*

Mr. Doran's claim of retaliation in violation of Title VII is not time barred because he filed an administrative charge with the EEOC alleging a violation of Title VII. The Court further finds that there are disputed issues of material fact concerning Mr. Doran's third count. Summary judgment on Count Three will be denied.

■ Mr. Doran's claim of retaliation in violation of the ADEA is time barred. Mr. Doran never filed an administrative charge with the EEOC alleging an ADEA violation. Therefore, his claim of retaliation in violation of the ADEA cannot be reasonably related to the charges that he filed in his EEOC complaint. *See Van Zant,* 80 F.3d at 712. Summary judgment on Count Four will be granted.

## B. Negligent Hiring (Counts Five and Six)

■ In Connecticut, an employer can be liable for negligent hiring if the employer, "knowing what he knew or should have known, would have anticipated the harm of the general nature of that suffered was likely to result from his conduct." *Hearl v. Waterbury Young Men's Christian Association, et al.,* 187 Conn. 1, 5, 444 A.2d 211 (1982). If the plaintiff allegedly suffers an emotional rather than a physical injury, the plaintiff must also prove that the defendant should have realized that its conduct involved an unreasonable risk of

causing emotional distress that might result in illness or bodily harm. *Surowiec v. Security Forces, Inc.*, 1995 WL 328362 (Conn.Super.1995).

■ Neither Ms. Mendes nor Doran have presented any evidence which demonstrates that any of the College's or Jednak's conduct during their employment would give a reasonable person cause to believe that such conduct would result in physical illness or bodily harm.[2] The Court finds that Jednak's July 11th performance memo, the two disciplinary memos, the disagreements about the operation of the Housekeeping department, the College's failure to inquire about Ms. Mendes's condition during her absence, and the three memos regarding the conditions of the College's grounds, are not a sufficient basis to create an actionable claim. *See Hill v. Pinkerton Security & Investigation Services, Inc.*, 977 F.Supp. 148, 160 (D.Conn.1997) (summary judgment granted where the plaintiff claimed that being reprimanded and disciplined amounted to outrageous conduct). Summary judgment will be granted as to Counts Five and Six.

**C. Conn.Gen.Stat. Sec. 31–49 (Counts Seven and Eight)**

■ Counts Seven and Eight of the plaintiffs' complaint allege violations of Conn.GenStat. Sec. 31–49. Defendants argue that Conn.Gen.Stat. 31–49 does not give rise to an independent private right of action. This Court agrees that this is a correct statement of the law. *See Swaney v. Pfizer*, 1999 WL 185138 (Conn.Super.1999). Summary judgment will be granted as to Counts Seven and Eight.

**D. Negligent Infliction of Emotional Distress (Count Nine)**

Count Nine of the plaintiffs' complaint alleges that the College's and Jednak's actions during the employ and subsequent termination of Ms. Mendes resulted in the negligent infliction of emotional distress. Defendants argue that they are entitled to judgment as a matter of law because Ms. Mendes's claim was not based on unreasonable conduct of the defendant in the termination process.

■ In order to sustain a claim for negligent infliction of emotional distress, the plaintiff must prove that (1) the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress, and (2) that the distress, if it were caused, might result in illness or bodily harm. *Montinieri v. Southern New England Tel. Co.*, 175 Conn. 337, 345, 398 A.2d 1180 (1978). Termination of employment, even where it is wrongful, is not enough alone to sustain a claim for negligent infliction of emotional distress. In an employment context, a claim for negligent infliction of emotional distress arises only were it is based on unreasonable conduct of the defendant in the termination process. *Parsons v. United Tech. Corp.*, 243 Conn. 66, 700 A.2d 655 (1997).

■ Ms. Mendes does not present any evidence that the College conducted her termination in an outrageous or unreasonable manner. Rather, she merely alleges that after seventeen weeks she received a letter notifying her of her termination, and that after a two-year absence from her position, she was wrongfully denied reinstatement. There is no evidence of allegations that the College's conduct in sending her the termination letter or its refusal to reinstate her was outrageous.

Moreover, as previously stated, the Court is unaware of any evidence of the defendants' conduct which involved an unreasonable risk of causing emotional distress, and that the distress, if it were

**2.** The record is clear that Ms. Mendes never affirmatively told Mr. Jednak about her illness or disability while working at the College. Moreover, she does not allege that any episode or panic attack that she experienced in front of Mr. Jednak would lead him or another to believe something was not right because when Ms. Mendes felt her panic attacks emerging, she would immediately leave the room.

caused, might result in illness or bodily harm. Summary judgment will be granted on Count Nine.

### E. ADA Claim of Ms. Mendes (Count Fourteen)

The ADA prohibits employers from discriminating against disabled individuals on the basis of disability. 42 U.S.C. § 12112(a). In order to make a prima facie case of discriminatory discharge under the ADA, a plaintiff must show that: (1) her employer is subject to the ADA; (2) she suffers from a disability within the meaning of the ADA; (3) she could perform the essential functions of her job with or without a reasonable accommodation; and (4) she was fired because of her disability. *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 869–870 (2d. Cir.1998).

Defendant claims that Ms. Mendes is not a qualified employee under the ADA because her disability prevented her from performing the essential functions of her job.

Plaintiff bears the burden of production and persuasion with respect to whether she is otherwise qualified for a particular job. *Borkowski v. Valley Central School District*, 63 F.3d 131, 137 (2d Cir.1995). She must show that she is able to perform the essential functions of the job, despite the handicap, either with or without a reasonable accommodation. *Gilbert v. Frank*, 949 F.2d 637, 641–642 (2d Cir.1991). The plaintiff would not be a qualified individual, even if she did not satisfy the standard solely because of her disability. *Matthews v. Commonwealth Edison Co.*, 128 F.3d 1194, 1195 (7th Cir. 1997).

On July 14, 1994, Ms. Mendes abruptly left the College, did not attempt to return to work for two years, and applied for and received long-term disability benefits for being totally disabled. In her deposition she states:

> Remember at this time I was agoraphobic. I couldn't even go out of my bedroom, let alone go to work, but with therapy I thought I would try, and if I could go back, which I wanted to, I felt that I should be supervised by someone else. I was going to try in the beginning. I just couldn't do it. I just couldn't do it.

When Ms. Mendes was invited by a colleague to apply for a different position at the College she declined, stating that she could not "emotionally handle working at the College anymore." Plaintiff's own testimony and supporting briefs and memoranda demonstrate that her disability was so debilitating that she could not perform the essential functions of her job and was therefore not a qualified employee.[3] Summary judgment will enter on Count Fourteen.

### F. Ms. Mendes's ERISA Claim (Count Sixteen)

Count Sixteen of the plaintiff's complaint alleges that, as plan administrator, Saint Joseph College denied Ms. Mendes long-term disability benefits in violation of ERISA.[4] Defendant St. Joseph College argues that it is entitled to judgment as a matter of law on Count Sixteen because ERISA only allows a plaintiff to pursue a claim through a direct action against the plan itself, and not her employer, where the employer as the plan administrator had no involvement in the decision to terminate benefits.

---

**3.** Plaintiffs' brief states in part: "It is also clear that she was disabled not simply from working for Jednak but from any work and even from household chores, activities with her family and most aspects of ordinary life, until she was able to deal with her condition, a recovery which took her three years."

**4.** Ms. Mendes incorrectly asserts that she has an ERISA action against St. Joseph College, for the denial of her long-term disability benefits, using state common law agency principles. *See UNUM Life Insurance Co. of America v. Ward*, 526 U.S. 358, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999) (ERISA preempts state common law agency principles).

■ An employer cannot be held liable for benefits under the terms of an employee benefits plan unless it is the designated plan administrator or trustee. *Crocco v. Xerox Corp.,* 137 F.3d 105, 107 (2d Cir.1998). Under ERISA, the proper party to a claim for benefits pursuant to an employee welfare benefit plan is the entity that made the eligibility decisions with respect to the plan. *MacMillan v. Provident Mutual Life Insurance Co. of Philadelphia,* 32 F.Supp.2d 600 (W.D.N.Y.1999). *See also Pecor v. Northwestern Nat'l Insurance Co.,* 869 F.Supp. 651, 653 (E.D.Wis.1994) (a suit for benefits is a suit against the plan and the insurance company with whom the plan administrator contracted to provide the benefits at issue).

■ Although Saint Joseph concedes that it is the plan administrator, it has done nothing in that capacity which would establish any liability under ERISA. The Hartford underwrote, administered, and discontinued Ms. Mendes's long-term disability benefits on July 21, 1995 after an independent examination. As such, a cause of action under ERISA for denying long-term disability may only be brought against the Hartford and not St. Joseph College. Summary judgment will be granted on Count Sixteen.

## CONCLUSION

For the above reasons, the defendants St. Joseph College and Jednak's Motion for Summary Judgment [Doc. # 152] is GRANTED as to Counts Four, Five, Six, Seven, Eight, Nine, and Fourteen. Defendants' Motion is DENIED as to Counts One, Two, Three and Fifteen. In addition, defendant St. Joseph College's Motion for Summary Judgment [Doc. # 155] is GRANTED on Count Sixteen. Plaintiffs are ordered to amend their complaint in conformity with this ruling within 30 days.