Catherine E. **MALARKEY**, Plaintiff,

v.

**TEXACO, INC.**, Defendant.

No. 81 Civ. 5224–CSH.

United States District Court,
S.D. New York.

July 23, 1982.

Spizz & Gans, Mineola, N.Y., for plaintiff; Harvey W. Spizz, Mineola, N.Y., of counsel.

Whitman & Ransom, New York City, for defendant; Michael C. Pelletier, Kevin P. Barry, New York City, of counsel.

---

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

In this action charging defendant with sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); with age discrimination in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.* ("ADEA"); and with conduct tortious under New York State law, defendant moves pursuant to F.R.Civ.P. 12(b)(1), (6) to dismiss the complaint in part for lack of subject matter jurisdiction and for failure to state a claim.

The complaint sets forth the following facts, which at this stage of the proceedings are deemed to be true. Plaintiff Catherine Malarkey has been employed since 1964 by defendant Texaco, Inc., initially as an executive secretary to a Texaco vice-president, a grade level 12 position. ¶ 18. In February 1975, plaintiff became an employment supervisor in the Employment Office, a position that plaintiff was told was a grade 12 position, which she believed was a grade 12 position when she accepted the transfer, and which she presently maintains was a grade 12 position (¶¶ 9, 16, 17, 19). Nevertheless, one year later, on February 1, 1976, in connection with an offer to plaintiff of a new grade 11 job as secretary to R.C. McCay, another Texaco vice-president, plaintiff was told that her prior position as employment supervisor had in fact also been rated a grade 11 (¶ 15). Plaintiff accepted the job transfer because she believed what she was told regarding the grade 11 level of the employment supervisor position, since discovered by her to be untrue (¶ 17), and because she was assured by four superiors that in a few months, "if McCay were pleased with her work," she would be promoted to a grade 12 (¶¶ 15, 20). More than one year later, however, plaintiff was told that her secretarial position would not be upgraded (¶ 21). And, despite McCay's promise to give plaintiff added responsibilities in order that her position be upgraded, her job remained the same (¶ 22).

In March 1980, McCay was promoted to senior vice-president and became President of Texaco Europe (¶ 23). On March 28, McCay told plaintiff that he would no longer need her as a secretary, and told her of two other grade 11 positions available to her (¶ 24). While plaintiff has been in a grade 11 clerical position since (¶ 25), a younger woman was appointed secretary to McCay (¶ 37). Plaintiff has since been denied other executive secretary positions in favor of younger, more attractive women (¶¶ 29–40).

On July 22, 1980, plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging that defendant was discriminating against her on the basis of age and sex. On June 15, 1981, the EEOC, having determined there was no probable cause to believe that defendant was engaged in the conduct complained of, issued plaintiff a notice of right to sue with respect to the sex discrimination claim, and plaintiff filed the instant complaint on August 21, 1981. The complaint alleges that Texaco promotes women in general, and plaintiff in particular, "on the basis of their physical attractiveness" (¶ 29); that "younger women are viewed by management as being more attractive than older women" (¶ 31); that plaintiff, while equally if not better qualified than younger women at the company, has not fared as well as them in job opportunities (¶ 34);

and that this policy constitutes age and sex discrimination in violation of Title VII and the ADEA. The complaint contains in addition a pendent state law claim charging defendant with negligent and reckless infliction of emotional and physical distress. Plaintiff prays for a court-ordered promotion, back pay, liquidated damages, $10 million in compensatory damages, and an equal amount in punitive damages.

On the instant motion to dismiss, defendant advances a number of claims. First, with respect to the allegations in the complaint arising out of the events in February 1976, when plaintiff was allegedly demoted from a grade 12 employment supervisor to a grade 11 secretary, defendant contends that the administrative charges required by both the ADEA and Title VII as preconditions to suit were not filed with the EEOC in a timely fashion. Second, defendant alleges that the complaint fails to state a Title VII claim, as it does not allege discrimination between men and women, but only between younger, attractive women, and older, less attractive women. Third, defendant attacks the state law claim as the type of "spurious" claim rejected by the New York State courts, as barred under New York's Workers' Compensation Law, and as unsuitable for the exercise of pendent jurisdiction. Finally, defendant, assuming *arguendo* that the ADEA claim is the only valid claim, moves to strike plaintiff's demand for compensatory damages.

I address these arguments in turn.

*Timeliness*

■ Pursuant to subsection 7(d) of the ADEA, 29 U.S.C. § 626(d), a claimant in a deferral state such as New York has 300 days from the act complained of within which to file an administrative charge with the EEOC.[1] Subsection 706(e) of Title VII, 42 U.S.C. § 2000e–5(e), the counterpart of § 7(d) of the ADEA, also gives a deferral state claimant 300 days to file an administrative charge. Defendant argues that, because the date of plaintiff's alleged demotion on February 1, 1976 is more than 300

days prior to July 22, 1980, the day she claims to have filed her charge with the EEOC, her administrative charges were untimely. Defendant further argues that any discriminatory acts which occurred prior to September 25, 1979, which is 300 days before July 22, 1980, are time-barred. Plaintiff contends, in response, that the February 1976 incident is not an isolated one, but rather is a part of a continuing violation as to which the limitations period has not run.

Plaintiff's position must be rejected. That is because, while employees who have been demoted continue to feel the effects of that demotion in terms of reduced salary and job opportunities, as plaintiff alleges is the situation at bar, "the critical question is whether any present *violation* exists." *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed. 571 (1977) (emphasis in original); *accord, Delaware State College v. Ricks,* 449 U.S. 250, 257–58, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980) ("[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination.") In the case at bar, the requisite present violation is not, as plaintiff urges, found either in the conclusory assertion, made in ¶ 4 of the complaint, that the violation is continuing, or in plaintiff's present assertion that she is in fact complaining of a failure to promote. First, notwithstanding the emphasis in plaintiff's brief placed on failure to promote cases, plaintiff's complaint concerning what transpired in February 1976 is clearly that she was demoted. Plaintiff complains in her complaint, for example, that "defendant had deceived her into a demotion" (¶ 17); similar statements appear in plaintiff's affidavit in opposition. The most revealing statement, however, comes at ¶ 36 of the complaint, in which plaintiff alleges that defendant discriminated against her "when she was *transferred back* to Executive Secretary, and *again on or about* March 28, 1980, when plaintiff was not promoted to Executive Secretary to McCay ... and *has*

---

1. The ADEA charge was originally to be filed with the Secretary of Labor; effective July 1, 1979, however, jurisdiction was transferred to the EEOC.

*continued to date* by having plaintiff work ... as an 'Administrative Assistant.'" A fair reading of that statement, in the context of the complaint taken as a whole, indicates that the continuing failure to promote, if one has occurred at all, has taken place since March 1980, not since February 1976, and that what transpired in February 1976 was a "transfer back"—a demotion.

Nor is the requisite continuity found either in plaintiff's statement that, at the time she became McCay's secretary, she was told that she "would be 'promoted' to a grade 12 in a few months if McCay were pleased with her work," Complaint ¶ 15, or in her assertion that "McCay assured plaintiff that he would seek to give her additional responsibilities and challenges in order that she could be upgraded to a grade 12." *Id.* at ¶ 12. Assuming the truth of these allegations, both statements express hopes, rather than the certainty found in the demotion, and both must be viewed in light of the fact that sometime in early 1977, plaintiff was told the position would not be upgraded. *Id.* ¶ 21.[2] Such speculative promises, made after a clear demotion, do not revive the earlier claim.[3]

■ Because there is a "reasonable ascertainable date on which the act [the demotion] occurred, that is the day on which the statute began to run," notwithstanding that plaintiff may still feel some effects as a result of the prior discriminatory act. *Marshall v. American Motors Corp.,* 475 F.Supp. 875 (E.D.Mich.1979). *See generally Milton v. Weinberger,* 645 F.2d 1070, 1075 (D.C.Cir.1981). Put somewhat differently, "a plaintiff may not circumvent the limitations period merely by labelling an act a 'continuing' violation. *Completed acts such as a termination through discharge or resignation, a job transfer, or discontinuance of a particular job assignment, are not acts of a 'continuing' nature." Corbin v. Pan*

*American World Airways,* 432 F.Supp. 939, 944 (N.D.Cal.1977) (emphasis added).

■ While I conclude that those claims arising out of the demotion of plaintiff in 1976 are time-barred, those prior acts "may constitute relevant and probative background evidence." *See United Air Lines, supra,* 431 U.S. at 558, 97 S.Ct. at 1889. These actions will, therefore, be allowed as evidence whether plaintiff was subsequently discriminated against because of age or sex. Although the evidence concerns time-barred conduct, "'it is relevant, ... and may be used ... to illuminate current practices which, viewed in isolation, may not indicate discriminatory motives.'" *Downey v. Southern Natural Gas Co.,* 649 F.2d 302, 305 (5th Cir.1981), *quoting Crawford v. Western Electric Co.,* 614 F.2d 1300, 1314 (5th Cir.1980).

*Title VII Claim*

It is common ground that Title VII prohibits discrimination on the basis of sex, that is, discrimination between men and women. It is equally agreed that if the complaint alleged that men when compared to women were not subject to age or beauty criteria in determining their eligibility for promotions, the complaint would state a cause of action. Defendant contends that the complaint does not and cannot allege this, but simply complains of discrimination among women on the basis of their age as evidenced by their physical attractiveness. Plaintiff, citing the obvious fact that there are only two sexes, and claiming that the allegations in the complaint to the effect that women are subject to employment decisions on the basis of physical attractiveness, suggest that women are subject to unique employment burdens, contends that a charge of discrimination between men and women is implicit in the complaint.

---

**2.** Even assuming that plaintiff could have properly relied on the suggestion of promotion that she received at the time of her alleged demotion, those promises, according to the complaint, were clearly reneged upon "more than a year later [when] plaintiff was told the position could not be upgraded." Thus, at the latest,

the time within which the administrative charges had to be filed may have run from the 1977 date. In this case as well, the filing would still be untimely.

**3.** Plaintiff's claim of estoppel, based on promises of promotion, fails for the same reasons.

The analysis, of course, must start with the complaint. The complaint in essence states that younger women are viewed by management as more attractive than older women, and that plaintiff was and is as qualified as younger women who were promoted in her stead. Nowhere does plaintiff allege that she was denied a promotion in favor of a male, and nowhere does she allege that she has at any time been in competition with a male. She has been in competition only with younger women, and for allegedly nonjustifiable reasons, has lost out to them. The complaint permits of no other construction.

If these allegations are true, defendant's behavior was abhorrent. But it is not behavior falling within the proscriptions of Title VII. It is based on· age, not sex. Because the complaint alleges that only women were promoted to the positions in question, the ultimate choice of which women to hire could not have been based on discrimination between men and women. *See DeVolld v. Bailar,* 568 F.2d 1162 (5th Cir.1978). As the Fifth Circuit stated in *Stroud v. Delta Airlines,* 544 F.2d 892 (5th Cir.), *cert. denied,* 434 U.S. 844, 98 S.Ct. 146, 54 L.Ed.2d 110 (1977), a case in which Delta's policy forbidding employment as stewardesses (an entirely female group) of married persons was unsuccessfully challenged under Title VII:

> "Here, plaintiff is not a member of one of the relevant, identifiable classes which has been discountenanced in favor of another such class. Rather, certain women—stewardesses who are unmarried—are favored over certain other women—stewardesses who are married. As one of the all-female group of flight attendants employed by Delta, plaintiff suffered a discrimination, but it was based on marriage and not sex. Men were not favored over women; they simply were not involved in the functioning of the policy."

*Id.* at 893.

That *Stroud* involved distinctions drawn between unmarried and married persons, while the case at bar alleges distinctions drawn between the more attractive and the less attractive, is immaterial. The *Stroud* rationale is persuasive, and I adhere to it as my own. The complaint does not state a Title VII claim.

## State Law Claim

Plaintiff relies on the Court's pendent jurisdiction to support her state law claim, in which she seeks compensatory and punitive damages for the negligent infliction of emotional and physical distress arising out of the alleged discrimination. It is the Court's view, however, that the claim is not suited for the exercise of pendent jurisdiction.

In *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Court held that there were two issues to be considered in determining whether to exercise pendent jurisdiction. The first relates to the *power* of the Court to hear the claim, the second to whether the Court, in the proper exercise of *discretion,* ought to hear the claim. *See Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), *overruled on other grounds, Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The *Gibbs* Court defined the power of the federal court as follows: "[I]f, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole." 383 U.S. at 725, 86 S.Ct. at 1138 (emphasis in original). That requirement has apparently been satisfied here, where plaintiff's remaining ADEA claim is the gist of her complaint, and not merely a pretext to get into federal court, and where the state and federal claims "derive from a common nucleus of operative fact." *Id.*

While the Court has the power to adjudicate plaintiff's state law claims, I decline, in the exercise of judicial discretion, to exercise that power. As a matter of discretion, the *Gibbs* Court directed the trial court to consider "judicial economy, convenience and fairness to litigants; if these are not

present a federal court should hesitate to exercise jurisdiction over state claims." *Id.* at 726, 86 S.Ct. at 1139. More specifically, the *Gibbs* Court suggested that the federal court avoid nonjurisdictional problems "such as the likelihood of jury confusion in treating divergent legal theories of relief," *id.* at 727, 86 S.Ct. at 1139, as well as "[n]eedless decisions of state law ... both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Id.* at 726, 86 S.Ct. at 1139. With respect to the latter, at least one unsettled question of state law has already emerged: whether state Workers' Compensation bars maintenance of a common law action of the type urged by plaintiff. Another is whether under state law plaintiff can maintain a court action having "filed" a complaint with the NYSDHR. *See State Division of Human Rights v. Commission of N.Y.S. Dep't of Civil Service*, 57 A.D.2d 699, 395 N.Y.S.2d 774 (4th Dep't 1977); *Allison v. Board of Educ.*, 70 Misc.2d 215, 333 N.Y.S.2d 261 (Sup.Ct. Nassau County 1972). In addition, injection of plaintiff's state claim, which, at least insofar as it seeks compensatory and punitive damages, involves questions of plaintiff's mental state and defendant's malice irrelevant to an ADEA claim, could result in jury confusion.

Accordingly, Count III of the complaint is dismissed.

*Compensatory Damages Under the ADEA*

■ Having determined that plaintiff's ADEA claim arising out of the February 1976 demotion and her Title VII claim must be dismissed, I turn next to the question whether compensatory damages other than those for lost wages are recoverable under the remaining ADEA claim arising out of the March 1980 events. I hold that they are not.

It is clear for the reasons stated by Judge Motley in *Ayres v. Federated Department*

*Stores, Inc.*, 24 Fair Empl.Prac.Cas. 528 (S.D.N.Y.1980) that compensatory damages are not authorized under the ADEA. *Accord, Naton v. The Bank of California*, 649 F.2d 691 (9th Cir.1981); *Slatin v. Stanford Research Inst.*, 590 F.2d 1292 (4th Cir.1979); *Vazquez v. Eastern Air Lines, Inc.*, 579 F.2d 107 (1st Cir.1978); *Dean v. American Security Ins. Co.*, 559 F.2d 1036 (5th Cir.1977), *cert. denied*, 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978); *Rogers v. Exxon Research & Engineering Co.*, 550 F.2d 834 (3d Cir.1977), *cert. denied*, 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978). Accordingly, defendant's motion for summary judgment dismissing plaintiff's prayer for compensatory damages other than those for unpaid salary and benefits is granted.[4]

### CONCLUSION

To summarize briefly the Court's rulings:

(1) Defendant's motion to dismiss so much of Counts I and II of the complaint as relate to the February 1976 demotion is granted on the grounds that plaintiff failed to file a timely administrative charge with the EEOC under the ADEA and Title VII.

(2) Defendant's motion to dismiss in its entirety Count II of the complaint, which asserts a cause of action under Title VII, is granted.

I am further of the opinion that the judgment dismissing Count II should be certified as a final judgment under Rule 54(b). This will make possible an appeal, at this time, of the Court's ruling that the complaint does not state a claim of the type of sex discrimination prohibited by Title VII. In exercising my discretion to issue a Rule 54(b) certification, I consider that the proof that would be required at trial to prevail under the remaining ADEA claim would be substantially the same as that required to prevail under the Title VII claim, and that the only substantive difference between the two causes of action at trial would be the

---

4. I recognize that the Second Circuit has yet to rule on the issue of compensatory damages, and that there is a split of authority among district courts. *See, e.g., Pavlo v. Stiefel Laboratories, Inc.*, 22 Fair Empl.Prac.Cas. 489 (S.D.

N.Y.1979) (Broderick, J.). Plaintiff may, of course, at any time bring to the Court's attention a Second Circuit decision holding to the contrary.

legal theories applicable to the evidence adduced. While as stated *ante* I do not accept plaintiff's position on the issue, it is in my judgment appropriate, in the interest of judicial economy, that plaintiff be able to test the sufficiency of Count II of the complaint prior to proceeding on the merits under the ADEA. Accordingly, the Court having determined that there is no just reason for delay, the Clerk of the Court is hereby directed pursuant to F.R.Civ.P. 54(b) to enter judgment in favor of defendant dismissing Count II of the complaint.

(3) Defendant's motion to dismiss in its entirety Count III of the complaint is granted on the ground that it is not suitable for the exercise of pendent jurisdiction.

(4) Defendant's motion to strike plaintiff's demand for compensatory damages under the ADEA is granted.

Counsel for the parties are directed to attend a status conference on September 2, 1982 at 3:00 p.m. in Courtroom 312.

It is So Ordered.