**Nicholas John USALA, Plaintiff,**

v.

**CONSOLIDATED EDISON CO. OF N.Y., Defendant.**

**No. 99 CIV 8848 JGK.**

United States District Court, S.D. New York.

March 22, 2001.

**ORDER**

KOELTL, District Judge.

Plaintiff Nicholas Usala brings this action against his former employer, Consolidated Edison Company of New York, Inc. ("Con Edison"). The plaintiff alleges that the defendant discriminated against him on the basis of his disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. The defendant now moves pursuant to Fed. R.Civ.P. 56 for summary judgment.

**I.**

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1223 (2d Cir.1994). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)); *see also Gallo,* 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. *See Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir.1994). "In considering the motion, the court's responsibility is not to resolve disputed issues of fact, but to assess whether there are factual issues to be tried." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986).

On a motion for summary judgment, once the moving party meets its initial burden of demonstrating the absence of a

genuine issue of material fact, the nonmoving party must come forward with specific facts to show there is a factual question that must be resolved at trial. *See* Fed. R.Civ.P. 56(e). The non-moving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir.1993); *see Scotto v. Almenas*, 143 F.3d 105, 114–15 (2d Cir. 1998) (collecting cases); *Wyler v. United States*, 725 F.2d 156, 160 (2d Cir.1983).

## II.

There is no genuine dispute as to the following facts except where noted. The plaintiff was employed in the Construction Department of Con Edison from 1970 until June 30, 1999, when he voluntarily retired. (*See* Def.'s 56.1 Stmt. ¶ 1; Pl.'s 56.1 Stmt. ¶ 1; Deposition of Nicholas Usala ("Usala Dep.") at 20, 108–09.) From 1986 to 1997, the plaintiff worked as a Construction Inspector in Con Edison's Capital Improvement Section. (*See* Def.'s 56.1 Stmt. ¶¶ 3, 4; Pl.'s 56.1 Stmt. ¶ 2, 3.) Construction Inspectors and Construction Representatives, the next highest title in the Capital Improvement Section, are required to inspect and review work done by contractors on behalf of defendant at various locations throughout the city. (*See* Def.'s 56.1 Stmt. ¶ 4, Pl.'s 56.1 Stmt. ¶ 10.) Starting in 1993, all Construction Inspectors and Construction Representatives working the day shift in the Capital Improvement Section were required to drive to work daily and drive their personal cars to and from the various job sites they inspected, which was known as being "on mileage." (*See* Def.'s 56.1 Stmt. ¶ 5; Pl.'s 56.1 Stmt. ¶ 13; Usala Dep. at 32–34.)

The plaintiff chose to work primarily the night shift in the Capital Improvement Section from 1987 until 1994, although he occasionally worked the day shift. (*See* Def.'s 56.1 Stmt. ¶ 8; Usala Dep. at 13–14.) The plaintiff was not "on mileage" while working the night shift, although he sometimes drove to work sites using a company vehicle. (*See* Def.'s 56.1 Stmt. ¶ 9; Pl.'s 56.1 Stmt. ¶ 12.) The plaintiff alleges that he could not drive for more than thirty minutes at a time due to two heel spurs, which were diagnosed in 1985 and 1994. (*See* Pl.'s 56.1 Stmt. ¶ 8; Usala Dep. at 45–46.) He claims that he could drive during the night shift because the reduced traffic at night rarely required him to drive more than thirty minutes at a time. (*See* Usala Dep. at 47–48.)

Beginning in the spring of 1994, the plaintiff began to work more day shifts as a Construction Inspector because New York City reduced the number of permits issued for night work. (*See* Def.'s 56.1 Stmt. ¶ 11; Usala Dep. at 48.) The plaintiff was still not "on mileage," however, and he mainly used public transportation to get to and from work. (*See* Usala Dep. at 54–55.) In October of 1994, the plaintiff took and passed the test to be promoted to Construction Representative. (*See* Def.'s 56.1 Stmt. ¶ 14; Pl.'s 56.1 Stmt. ¶¶ 15, 16.) The plaintiff was not promoted at that time, however, because he was not "on mileage." (*See* Def.'s 56.1 Stmt. ¶ 15; Pl.'s 56.1 Stmt. ¶ 18.) The plaintiff was finally promoted in February 1997, retroactive to January 1996. (*See* Def.'s 56.1 Stmt. ¶ 16; Pl.'s 56.1 Stmt. ¶ 19.)

At some point in 1997 after the plaintiff's promotion, the defendant offered the plaintiff the opportunity to return to the night shift in the Capital Improvement Section, where he would not be required to be "on mileage"; the plaintiff declined because he hoped to retire in six or seven months. (*See* Def.'s 56.1 Stmt. ¶ 18; Usala Dep. at 249.) On November 7, 1997, the

plaintiff was transferred to the Public Improvement Section of the Construction Department, where there was no "on mileage" requirement. (*See* Def.'s 56.1 Stmt. ¶ 21; Pl.'s 56.1 Stmt. ¶ 22.) While the plaintiff kept the same title and salary and performed similar functions (*See* Def.'s 56.1 Stmt. ¶ 2; Usala Dep. at 224), he alleges that he lost overtime because there was less overtime available in the new position. (*See* Pl.'s 56.1 Stmt. ¶ 23; Usala Dep. at 224.)

In September 1998, the plaintiff filed a complaint with the EEOC asserting that his transfer to the Public Improvement Section was discrimination in violation of the ADA. (*See* Def.'s 56.1 Stmt. ¶ 23; Ex. A to Declaration of Manuel M. Salazar dated July 18, 2000 ("Salazar Declaration").) The EEOC dismissed the plaintiff's complaint and issued a right to sue letter on May 11, 1999. (Ex. B to Salazar Declaration.)

## III.

In his complaint, the plaintiff asserts that two actions constituted violations of the ADA: his lateral transfer to the Public Improvement Section and the delay in his promotion to Construction Representative.[1] (*See* Pl.'s 56.1 Stmt. ¶¶ 20, 23.) The

1. Although the defendant notes that the delay in promotion allegation was not included in the plaintiff's EEOC complaint (*see* Def.'s 56.1 Stmt. ¶ 24), the defendant does not contest its inclusion in the plaintiff's complaint.

2. The plaintiff contends that the failure to promote and the lateral transfer were discriminatory acts in violation of the ADA. A plaintiff may also bring a claim under the ADA for failure to reasonably accommodate a disability. *See, e.g., Lyons v. Legal Aid Soc.,* 68 F.3d 1512 (2d Cir.1995) (holding that the refusal to provide a parking space close to a work site may constitute failure to accommodate a disability under the ADA). The plaintiff has not brought such a claim and none would exist on the current record.

defendant moves for summary judgment with respect to both employment actions on two grounds. First, the defendant argues that the plaintiff's claims are barred by the applicable statute of limitations; and second, the defendant asserts that even if the plaintiff's claims were not time-barred the plaintiff cannot establish discrimination under the ADA.[2]

### (A)

The defendant contends that it is entitled to summary judgment because the plaintiff's claims are untimely. Before bringing a claim under the ADA, a plaintiff is required to file a timely EEOC charge. *Harris v. City of New York,* 186 F.3d 243, 247 (2d Cir.1999). The ADA incorporates the statute of limitations of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 12117(a) incorporating 42 U.S.C.2000e–5(e); *see Harris,* 186 F.3d at 247. In New York, a plaintiff has 300 days from an allegedly discriminatory event to file a charge with the EEOC. *Harris,* 186 F.3d at 247; *Butts v. City of New York Dep't of Housing Preservation & Dev.,* 990 F.2d 1397, 1401 (2d Cir.1993). "When a plaintiff fails to file a timely charge with the EEOC, the claim is time-barred." *Butts,* 990 F.2d at 1401; *see also* 42 U.S.C.

The Court of Appeals has recognized that if an appropriate alternative position is vacant, reassignment to that position may be a reasonable accommodation under the ADA. *Norville v. Staten Island Univ. Hosp.,* 196 F.3d 89, 99 (2d Cir.1999). In the present case, it is clear from the record that the defendant offered to return the plaintiff to the night shift where the "on mileage" requirement did not exist. (*See* Usala Dep. at 249.) This offer falls within the scope of the ADA's definition of "reasonable accommodation." *See* 42 U.S.C. § 12111(9)(B). Because the plaintiff declined the offer, he cannot claim that the defendant failed to accommodate his alleged disability.

§ 2000e—5(e); *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996).

The plaintiff in this case filed his original administrative charge with the EEOC on September 3, 1998. (*See* Affidavit of Nicholas Usala sworn to February 13, 2001 ("Usala Affidavit") at ¶ 4.) [3] Thus, only events that occurred during the 300-day period prior to filing—events that occurred on or after November 7, 1997—are actionable under the ADA.

■ Using this calculation, both the failure to promote and the lateral transfer are time-barred. According to the plaintiff, the alleged "delay in promotion" began in 1995. The plaintiff was eventually promoted in February 1997, well before November of that year. He could have brought a charge before the EEOC at any time after that date, but failed to do so within 300 days. The claim is therefore time-barred.

■ The lateral transfer claim is also time-barred. The Court of Appeals has explained that "[i]t has long been settled that a claim of employment discrimination accrues for statute of limitations purposes on the date the employee learns of the employer's discriminatory conduct." *Flaherty v. Metromail Corp.*, 235 F.3d 133, 137 (2d Cir.2000). *See also Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (holding that the statute of limitations period began to run once a tenure decision was made and communicated); *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir.1994) (stating that employment discrimination claims accrue once an employee "knows or has reason to know of the injury which is the basis of his action"); *Miller v. Int'l Tel. &*

*Tel. Corp.*, 755 F.2d 20, 23 (2d Cir.1985) (explaining that in a case of discriminatory discharge, the statute of limitations "starts running on the date when the employee receives a definite notice of the termination, not upon his discharge").

While the plaintiff was physically transferred on November 7, 1997, it is clear that he was notified before that date that he would be transferred. In his deposition, the plaintiff testified that he was informed of his impending transfer at a meeting on October 17, 1997. (*See* Usala Dep. at 227.) Accordingly, because the plaintiff learned of the defendant's allegedly discriminatory transfer prior to November 7, 1997, his claim regarding that transfer is also time-barred.

■ The plaintiff argues that his ADA claims are timely because the discriminatory treatment he was subjected to by the defendant constituted a "continuing violation" of the ADA. Under the continuing violation doctrine, if a plaintiff files a discrimination charge with the EEOC "that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims and acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir.1993); *see also Connecticut Light & Power Co. v. Secretary of the United States Dep't of Labor*, 85 F.3d 89, 96 (2d Cir.1996); *Cornwell*, 23 F.3d at 703–04; *O'Malley v. GTE Serv. Corp.*, 758 F.2d 818, 821–22 (2d Cir. 1985). The continuing violation doctrine typically applies to situations where there are specific discriminatory seniority poli-

---

**3.** The plaintiff had originally alleged in his complaint that he had filed his charge with the EEOC in October, 1998, and he did not contest the defendant's Rule 56.1 allegation that the charge was filed in October, 1998.

(*See* Def.'s 56.1 Stmt. ¶ 23.) The plaintiff asserted for the first time at oral argument of this motion that the charge was filed on September 3, 1998, but that fact appears now to be undisputed.

cies or mechanisms, such as discriminatory seniority lists or employment tests. *See Van Zant,* 80 F.3d at 713; *Cornwell,* 23 F.3d at 704; *Lambert,* 10 F.3d at 53. Ordinarily, "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Lambert,* 10 F.3d at 53; *see also Van Zant,* 80 F.3d at 713. A continuing violation may be found in the absence of a formal discriminatory mechanism, however, "where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory pattern or practice." *Cornwell,* 23 F.3d at 704; *see also Van Zant,* 80 F.3d at 713; *Anatsui v. Food Emporium,* No. 99 Civ. 1137, 2000 WL 1239068, at *4 (S.D.N.Y. Sept. 1, 2000). "Completed acts such as a termination through discharge or resignation, a job transfer, or discontinuance of a particular job assignment, are not acts of a 'continuing' nature." *Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 907 (2d Cir. 1997) (citing *Malarkey v. Texaco,* 559 F.Supp. 117, 121 (S.D.N.Y.1982)).

In the present case, the alleged failure to promote and the lateral transfer were both distinct and completed acts. The plaintiff has raised no genuine issue of material fact that suggests any acts after those events occurred within the statute of limitations and were part of a continuing violation with the events that occurred outside the statute of limitations. The plaintiff could have filed his charge with the EEOC at any time after the delay in promotion or the notification of his lateral transfer; his failure to do so cannot be saved under the continuing violation doctrine. Each of the alleged incidents of discrimination is therefore time-barred.

### (B)

■ The defendant also argues that it is entitled to summary judgment because the plaintiff cannot establish his claim of discrimination under the ADA. To establish a prima facie case of discrimination under the ADA, the plaintiff must show that: "(1) his employer is subject to the ADA; (2) he suffers from a disability within the meaning of the ADA; (3) he could perform the essential functions of his job with or without a reasonable accommodation; and (4) he was [discriminated against] because of his disability." *Reeves v. Johnson Controls World Srvs., Inc.,* 140 F.3d 144, 149–50 (2d Cir.1998); *see* 42 U.S.C. § 12112(a); *Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867, 869–70 (2d Cir. 1998). The defendant contends that summary judgment should be granted because the plaintiff cannot show that he is "disabled" within the meaning of the ADA.

■ The ADA defines a "disability" with respect to an individual as:

"(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such impairment; or

(C) being regarded as having such an impairment."

42 U.S.C. § 12102(2). The plaintiff claims that he has heel spurs which qualify as a disability under subsection (A) of the definition of "disability." In *Bragdon v. Abbott,* 524 U.S. 624, 631, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998), the Supreme Court set forth a three-part test for a "disability" under subsection (A) of the statute. First, the plaintiff must show that he suffers from a physical or mental impairment. *Id.* Second, the plaintiff must show that the impairment affects a "major life activity." *Id.* Third, the plaintiff must show that the physical or mental impairment "substantially limited the major life activity." *Id.* "In order to be eligible to prevail upon a

further showing of discrimination, a plaintiff must satisfy each of the three prongs." *Colwell v. Suffolk County Police Dep't,* 158 F.3d 635, 641 (2d Cir.1998).

The plaintiff contends that he suffered from heel spurs that substantially limited a major life activity. In his initial papers the plaintiff contended that his heel spurs substantially limited the allegedly major life activity of "driving." In his supplemental papers, the plaintiff shifted to the argument that his heel spurs substantially limited the major life activity of "working." While the plaintiff must meet each of the three prongs explained in *Bragdon* to establish his claim, it is clear that he cannot show a "major life activity" was "substantially limited" by his alleged impairment.[4] Consequently, he does not suffer from a disability covered by the ADA.

■ The agency responsible for enforcing the ADA, the EEOC, has issued regulations defining both "major life activities" and "substantially limits." While the EEOC's regulations are not binding, in this Circuit the EEOC's interpretation of the statute is accorded great deference. *Bartlett v. N.Y. State Bd. of Law Exam'rs,* 226 F.3d 69, 79 (2d Cir.2000); *Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc.,* 198 F.3d 68, 72 (2d Cir.1999); *Ryan,* 135 F.3d at 870.

■ The EEOC regulations specifically identify various activities, including working, as major life activities. *See* 29 C.F.R. § 1630.2(i) (defining "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working"). While this list is "illustrative, not exhaustive," *Bragdon,* 524 U.S. at 639, 118 S.Ct. 2196, the Court of

Appeals has noted that " 'major life activity,' by its ordinary and natural meaning, directs us to distinguish between life activities of greater and lesser significance." *Reeves,* 140 F.3d at 151. In addition to the activities listed in the EEOC regulations, the Court of Appeals has identified "sitting, standing, lifting, or reaching" as "major life activities." *Colwell,* 158 F.3d at 642 (citing *Ryan,* 135 F.3d at 870). To determine whether an activity is a "major life activity," the court must ask "whether that activity is a significant one within the contemplation of the ADA, rather than whether that activity is important to a particular plaintiff." *Colwell,* 158 F.3d at 642.

■ The EEOC regulations implementing the ADA define "substantially limits" to mean that an individual is:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). In determining whether an individual is substantially impaired in a major life activity, the regulations provide that the following factors should be considered: "(i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *Id.* § 1630.2(j)(2). This inqui-

---

4. Because the failure to satisfy any of the three prongs is dispositive, it is not necessary to reach the issue of whether heel spurs constitute an impairment under the ADA.

ry is "fact-specific." *Ryan*, 135 F.3d at 872; *see also Colwell*, 158 F.3d at 643.

■ With respect to his initial claim that his heel spurs "substantially limit" the "major life activity" of driving, the plaintiff has established neither a major life activity nor a substantial limitation. The Court of Appeals has held that driving is not a "major life activity" under the ADA. *Colwell*, 158 F.3d at 643 (stating that plaintiff "also identified a number of activities that cannot reasonably be deemed major league, such as driving ..."). In response, the plaintiff urges that the Court of Appeals was in error and that this Court should not follow the holding of the Court of Appeals. The argument has no merit and *Colwell* is controlling.

■ Moreover, the evidence establishes without any genuine dispute that the plaintiff was not "substantially limited" in the activity of driving. He is not unable to drive, nor is he "significantly restricted" in his ability to drive. The plaintiff can drive for as many as thirty minutes at one time (*see* Usala Dep. at 238), and if he uses cruise control on his car he can drive for much longer. (*See* Usala Dep. at 172.) Indeed, the plaintiff is able to drive all the way to Maine. *Id.* Although the heel spurs many affect the plaintiff's ability to drive in some respects, he has failed to show that they "substantially limit" his driving.

■ With respect to the plaintiff's supplemental allegation that his heel spurs substantially limit the major life activity of "working," there is no question that "working" is a major life activity specifically identified in the EEOC regulations. *See* 29 C.F.R. § 1630.2(i). However, the evidence is clear without any genuine dispute that the plaintiff was not "substantially limited" in the major life activity of working. The Court of Appeals has noted that the EEOC regulations "give guidance for determining whether an individual is substantially limited in the major life activity of 'working.'" *Colwell*, 158 F.3d at 643. The regulations provide that the ability to work is substantially limited if the plaintiff "is significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." 29 C.F.R. § 1630.2(j)(3)(i). Accordingly, "the inability to perform in a single, particular job does not constitute a substantial limitation to the major life activity of working." *Id.*

In the present case, the evidence establishes without genuine dispute that the plaintiff's heel spurs have not "substantially limited" his ability to work. Although the plaintiff's ability to drive may have been somewhat limited (*see* Usala Dep. at 238), he has presented no evidence suggesting that this "significantly restricted" his ability to perform a class or range of jobs. The plaintiff was transferred to another position with the same title and salary, and he was also offered the exact same job on the night shift that he was performing before his transfer. There is no evidence that the plaintiff was unable to perform these jobs. Thus, the plaintiff was not restricted in his ability to perform any class or range of jobs. In fact, the plaintiff testified at his deposition that his heel spurs *did not inhibit his ability to work.* (*See* Usala Dep. at 189.) This testimony is supported by the fact that the plaintiff performed a variety of jobs for Con Edison and continued to work there until his voluntary retirement in 1999. (*See* Usala Dep. at 20, 108–09.)

Because the plaintiff has failed to show that he was substantially limited in the major life activity of working, he has not met the second prong of the test for disability explained by the Supreme Court in

*Bragdon,* 524 U.S. at 631, 118 S.Ct. 2196. Accordingly, he has not established the second element of a prima facie case under the ADA—that he suffers from a disability under that statute. *Reeves,* 140 F.3d at 149–50.

## CONCLUSION

For the reasons explained above, the defendant's motion for summary judgment dismissing the plaintiff's ADA claims is granted. The Clerk of the Court is directed to enter judgment dismissing the complaint and closing this case.

**SO ORDERED.**